Titus, Ch. J.
The defendant, the Field Engineering Company, is a corporation, and was engaged in building the Buffalo Electric Street Railroad. It had charge of putting in the machinery and electric apparatus in the power house of the railroad company in this city. The work of the defendant was in charge of J. B. Graven, its agent. It had erected and put in place a large upright engine, and a fly wheel, twelve feet in diameter, which made 125 revolutions a minute. This fly wheel was placed within about twenty-two inches of the bedplate, on which rested the engine. Between the fly wheel and engine was a step, attached to the bedplate, eleven inches wide and three feet long. This step was provided for the operator to stand upon while oiling the machinery, and making necessary examinations to keep the bearings cool. This work required the workman to bend over, and reach with his arms to feel of the bearings and make necessary examination of the machinery. There was no guard around this step, or other appliance to prevent slipping while the workman was engaged in his duties. Oil was thrown from the "crank upon this step when the machinery was in motion, and it was part of plaintiff’s duty to keep this step free from oil. A portion of the fly wheel was let down below the level of the floor about four feet, forming a pit beneath the step. The lugs or fastenings of the wheel, when in motion, came within nine and one-half inches of the step. An iron or brass rail was placed around the wheel, forming a guard, and the step was attached to the posts holding up the guard rail. The plaintiff was twenty-eight years old when the accident occurred, and had been employed in his present capacity eight or ten days. He was not a mechanic or skilled workman, but for a number of years had worked more or less about machinery and engines, but had never worked upon an engine of this kind. He received no instructions from any one about running the engine, and was not cautioned in any way about anything connected with his employment. On the 9th day of March, while he was standing upon the step, bending over, feeling of the centre bearings, his foot slipped, and he fell, and some portion of the fly wheel struck him, injuring his leg so severely as to require amputation. This action is brought to recover damages for the injury thus received. On the trial, after the plaintiff had rested his case, the court, on motion of defendant’s counsel, granted a non-suit, and ordered the exceptions to be heard in the first instance at the general term.
The question presented by these facts is, is the plaintiff, in any view of the evidence, entitled to maintain this action ? The question is a serious one, and by no means free from doubt. The learned judge, in directing a nonsuit, assumed that the defendant was guilty of negligence, but concluded that the dangerous character of the machinery was as apparent to the plaintiff as to the defendant, and that the former took the risk of such perils as were incident to the employment, and could not recover for the injury.
*337 From the numerous cases, involving many different conditions and states of facts, the courts have evolved a few clearly defined and well-recognized rules applicable to cases involving the liability ■of the master for injuries received by his servant while employed in using dangerous tools and machinery. It is the duty of the master to use reasonable and proper care in supplying his servant with safe and proper tools and machinery with which to work. He is required to provide him a reasonably safe place in which to perform his work. Then the servant assumes the risks incident to his employment, and the master is not liable if he is injured. The servant is required to use reasonable care in performing -his work, but this presupposes the performance by the master of his duty to do all that is reasonable within his power to -protect the servant while so engaged. It is those risks, alone, which cannot be obviated by the adoption of reasonable measures of protection by the master that the servant assumes; and when the servant is made acquainted with the dangerous character of his employment, and of the place where he is called upon to work, if he takes employment with a full knowledge of its character and dangerous surroundings, and receives an injury, he is held to be without remedy. The cases cited below illustrate the rule sufficiently for our purpose. Booth v. Railroad Co., 73 N. Y., 40; Pantzar v. Mining Co., 99 id., 371; Probst v. Delamater, 100 id., 266; Hickey v. Taaffe, 105 id., 26 ; 6 St. Rep., 426; Bulkley v. Iron Ore Co., 117 N. Y., 645; 27 St. Rep., 978.
Measured by these rules, has the defendant, in this case, exercised reasonable and proper care in obviating the risks of the plaintiff’s ■employment, and not unnecessarily exposing him to danger ? Should it be required to do anything more for the safety of its workmen ? A guard could have been placed around the fly wheel, or over the pit, or even around the step upon which he was required to stand while in the performance of his work, at a very little expense, either of which would have been a perfect protection from the danger to be apprehended from the fly wheel. The learned judges have expressed these rules in varying language. In one case it was said: “It is the general rule that the dangers connected with such a business (employment with dangerous machinery) which are unavoidable, after the exercise by the master of proper care and precaution in guarding against them, are risks incident to the employment, and are assumed by those who accept employment under the circumstances. But those dangers which are known and can be mitigated or avoided by the exercise of reasonable care and precaution on the part of those carrying on the business, and injuries from which happen through neglect to exercise such care, are not incident to the business, and the master is generally liable for damages occurring therefrom. For instance, if the servant puts himself in the way of dangerous machinery, with knowledge of its character, or places himself in the way of bodies moving in their accustomed orbit with irresistible force, and is thereby injured, it will generally be regarded as the result of his own carelessness; but if he is engaged in a *338 business which may be safely carried on, according to the degree of care and caution used in prosecuting it, but, by omission of such care, may become hazardous to human life, it is the duty of those carrying on such business to adopt all reasonable precaution to avoid the occurrence of such danger.” McGovern v. Railroad Co., 123 N. Y., 280; 33 St. Rep., 416.
It may be said that a servant has no cause of action against the master for injury resulting from the negligence of the master, when the servant’s negligence contributed to the happening of the injury, and where he has full knowledge of the dangerous risks of the service, and no recovery can be had for an injury received solely from the hazard incident to the employment, because he assented to the employment with full knowledge, and assumed the risk, and his want of care for his personal safety, in taking such a dangerous employment, amounts to contributory negligence. Laning v. Railroad Co., 49 N. Y., 534. But can it be said, as a matter of law, from the facts in the case before us, that the plaintiff’s negligence contributed to the injury? He went to the place provided by the master to perform his service. He was acting strictly within the line of his duty when injured, and, while attempting to perform that duty slipped and fell, which could not have happened if a rim or guard had been placed around the step on which he was standing. Is the evidence of plaintiff’s negligence so conclusive that the court can say, without the aid of a jury, that his carelessness caused or contributed to the injury ? Gan it be said that the injury occurred “ solely from the hazard incident to the service,” and not from a cause which could have been foreseen and guarded against by the exercise of proper care and prudence on the part of the master ? It is difficult, from the evidence, to see in what particular the plaintiff’s carelessness or misconduct contributed to the accident; and it seems to us that the question was for the jury to determine, as, from the evidence, they might properly have found him free from negligence. In Pantzar v. Mining Co., the plaintiff was injured by the falling of rock from a cliff overhanging the place where he was employed. The rock had cracked and separated some time before the accident; and the court held the defendant liable, notwithstanding the plaintiff could see the dangerous condition of the rock, because the defendant had not used proper care and precaution in bracing the rock, or taking other adequate means to protect the servant in his employment. Chief Judge Ruger, in writing the opinion of the court of appeals, says: “ The very fact that the material was likely to fall apon and injure the defendant's servants at unexpected times imposed upon defendant the duty of inspection, and frequent and careful examinations, and, upon the discovery of any indications of danger, to adopt all suitable precautions to protect its servants from danger. The rule that the servant takes the risk of service presupposes that the master has performed the duties of caution, care and vigilance which the law casts upon him. It is those risks, alone, which cannot be obviated by the adoption of reasonable measures of precaution by the master that the servant assumes.”
*339 It may be pertinent to inquire whether the defendant, in this case, has omitted to take sucli reasonable precaution in providing a safe place for the servant to perform his labor as the law requires. In granting the motion for a nonsuit the trial judge assumed that the defendant was guilty of negligence, in failing to properly guard the fly wheel which injured the plaintiff, but placed his ruling upon the ground that the risk assumed by the plaintiff was as apparent to him as to the defendant, and that the injury which the plaintiff received was one incident to his employment,, and for which he was responsible. This ruling presupposes that, the defendant had discharged its duty to the plaintiff by the exercise of due care in providing reasonably safe appliance and place in which to perform his work. The rule invoked by the learned judge is undoubtedly correctly stated by him, but its application to the facts of this case we do not think had any force, because the servant assumes such risks only after the master has used due care and precaution to guard the former against danger, Pantzar v. Mining Co., supra. It was assumed that the defendant' had been derelict in that respect, and it at least presented a question for the jury; and if they were satisfied from the evidence that the defendant was negligent in not providing suitable safeguards to protect its employes in the performance of their work, so far as it could be reasonably done, it still left the question of the plaintiff’s negligence to be determined. The facts bearing upon this question may be briefly summarized: The plaintiff had worked somewhat about engines and machinery, but never upon this particular kind of engine. He was not a skilled workman, and but little accustomed to machinery. He had been employed in hiá present capacity eight or ten days. He had never received any instructions about the management of the engine, nor had his attention been called to the dangers attending his employment. It may well be that he did not know that the spattering of oil upon the step made his work more hazardous, and his liability to injury greater by reason of it. Certainly, if his attention had been called to that fact, he may very well have been either placed upon his guard to avoid slipping, or refused to work there until some steps had been taken by the defendant to protect him against such an occurrence, and insure his safety.
Of course, it must have been apparent that if he fell into the wheel he would be injured, but it was not so apparent that if he got upon the step, which the defendant had provided for him to stand upon to perform his work, he would slip and fall into the wheel. Could the risk which he took have been “avoided by the adoption of reasonable measures of precaution by the master ? ” If it could have been, then the rule stated by the trial judge could have no application until the master had taken such reasonable precaution as the law requires of him for the protection of his servants. It would seem, therefore, that whether the defendant had used the care required of it should have been submitted to the jury, and the correlative proposition, the plaintiff’s want of care, should likewise have been passed upon by the jury. It can *340 not, we think, be said, as matter of law, that the plaintiff assumed, the risk of his employment, in the absence of finding that the defendant had discharged the duty which the law. imposes upon the master. The evidence of the plaintiff’s experience was proper to be submitted to the jury upon the question of his negligence; but it was not conclusive, and, like any other fact, it was still the province of the jury to determine the question.
In granting the motion for the nonsuit the court relied upon the case of Hickey v. Taaffe. From an examination of that case, it does not appear that any new rule of law was enunciated. It was the application of well established and recognized principles governing cases of this kind to a new state of facts. The plaintiff had been employed in the defendant’s establishment for six weeks, in feeding a roller machine for ironing collars. She accidentally got her finger caught in a button hole, and, before she could extricate it, her hand was drawn between the rollers and badly burned. The injury was purely accidental; not caused by any want of care of the master in providing safe and suitable machinery or a safe place in which to work. The injury was the inevitable result of getting the finger caught in a button hole, which could not in any way be attributed to the machine, or want of care in applying proper guards to protect the operator. The accident was incidental to the employment, and one which, in law, the servant assumed. We do not think the case is at all decisive of the question here raised; and except as a general statement of the law, and an additional precedent, it has no greater force or application to the facts before us than many other cases found among the decisions of our court of appeals. Here the plaintiff stepped on a greasy step, which, with but slight expense and trouble, could have been rendered perfectly safe. The injury was not incident to the employment, in the sense that it might be expected to happen if the proper precaution had been taken by the defendant. It will hardly be claimed that the master may require his servants to climb over greasy, dangerous machinery, or in dangerous places, without first providing such safeguards as would, with the exercise of reasonable care on the part of the employe, enable him to perform his work in a reasonably safe place. 1 cannot agree with the trial judge in his statement of the facts of the plaintiff’s knowledge of the situation and character of the machinery. It is true he had some knowledge, but it seems to me it cannot be said that he had the same perfect knowledge of all of the dangers of the machine as the master, nor did he know, as well as the master knew, the precautions necessary to be taken to protect himself against injury. If he had had such knowledge this accident could not have happened, and, under the facts of this case, the rule that the servant, with full and complete knowledge of all of the facts surrounding his employment, assumes the risks, for the reasons stated, has no application.
The authorities cited by the counsel for the defendant do not vary the principles already stated. Hickey v. Taaffe has been referred to. In Shaw v. Sheldon, 103 N. Y., 667; 3 St. Rep., 679, the injured party, a foreman, a skilled workman, having full *341 knowledge oí the situation, and the dangers surrounding him, fell into the rollers of a machine; and the court held that he assumed the risk of his employment. In Clark v. Barnes, 37 Hun, 389, the injury was claimed to have been caused by falling on a slippery floor. The court, at general term, say that the floor was not slippery, and the cause of the accident must be looked for elsewhere than from a slippery floor. When the proof leaves it in doubt whether the injury was inflicted by negligence the case is not made out. In Loftus v. Ferry Co., 84 N. Y., 455, a child six years old stumbled and fell from a bridge leading from the ferryboat to the pier. Guard rails were properly constructed, and millions of people had passed over the bridge without accident. The court held that the defendant was bound to provide safe and suitable accommodations for the landing of passengers, but the law does not impose upon the defendant the duty of so far providing for passengers that they shall encounter no possible danger, and that the facts in the case refute the inference that the accident was likely to occur; and in determining this question the court gave weight to the fact that the child was not in charge of its mother when she received the injury. In Buckley v. Manufacturing Co., 23 St. Rep., 618, the court held that the injury did not result from a dangerous machine, but because of a mere accident from slipping and falling, and no amount of instruction or caution would have prevented the accident, and saved the servant from injury; that the injury did not come from any ignorance of machines, or of the danger to which he was exposed, but solely from the accident. This view of the evidence was concurred in by all of the judges taking part in the decision, and the court held the plaintiff was not entitled to recover. In Sweeney v. Envelope Co., 101 N. Y., 520, the machine was an old machine, in perfect repair. The plaintiff understood its use as well as the defendant; and the court held the master was not bound to furnish his employes with new machinery of the best pattern and appliances, but that the plaintiff, under such circumstances, assumed the risk incident to its operation. And the case of Kern v. Refining Co., 125 N. Y., 50; 34 St. Rep., 363, is in line with the Sweeney case.
In the case at bar, we think the proximate cause of the accident was the want of a guard around the step on which the plaintiff was required to stand while performing his work, or around the fly wheel. It was a dangerous place to work, and the defendant should have obviated the danger, as far as possible, by providing some means to guard the plaintiff, and protect him from injury; and the question should have been submitted to the jury under proper instructions from the court. The nonsuit should be set aside, and a new trial ordered, with costs to abide the event of the action.
Hatch, J.
The evidence presented by plaintiff would have authorized the jury to find that he was in fact unacquainted with the engine, in its construction and method of operation, and that he was placed at work upon it without knowledge or instruction of the dangers attending the work, except as the same was open *342 and apparent to the ordinary workman. I am not prepared to adopt the view that the liability to injury, such as was received by plaintiff, and the manner of its infliction, was so apparently obvious that the plaintiff can be said to have assumed it. The step from which he slipped was eleven inches wide. This was apparent, and he assumed what risk there was in its use as a step. But the working of the engine covered it, from time to time, with oil, of which it may safely be assumed plaintiff had no knowledge before he entered upon the performance of his duties. This circumstance created a dangerous step; and while plaintiff was doubtless chargeable with knowledge that if he came in contact with the fly wheel he would be injured, yet I do not think, as matter of law, that he was chargeable with knowledge that the step would be rendered slippery and dangerous by the action of the engine. At least, he would not have been so chargeable when he entered upon the performance of his duties; and whether the knowledge which he thereafter acquired, in the short time he was at work, sufficiently apprised him of the danger, in the view "taken, presents a question of fact, and made a case for the jury, considering all the circumstances. That the place was not reasonably safe seems clear. That it could be made safe without difficulty, or detriment to the working of the engine, seems equally so. Its unsafe condition was known to the master, and its foreman suggested how it could be made sáfe. Within the authorities of Pantzar v. Mining Co., 99 N. Y., 368; Davidson v. Cornell, 132 id., 234; 43 St. Rep., 887; McGovern v. Railroad, Co., 123 N. Y., 280; 33 St. Rep., 416 ; and many others, I am of opinion that this case presented a question for the jury. Nothing is found in conflict with this view in Hickey v. Taaffe, 105 N. Y, 26; 6 St. Rep., 426. The whole question turns upon whether the danger was so open and obvious that plaintiff took the risk. The facts of that case admitted of no other conclusion. The facts here, for reasons stated, admit of the conclusion that the attendant risks were not so obvious and open that. the case can be disposed of as a question of law. The conclusion is, therefore, reached that the exceptions should be sustained, and the motion for a new trial granted ; costs to abide the event.