MARY APPEL, as Administratrix, etc., Respondent, *v.* THE BUFFALO, NEW YORK AND PHILADELPHIA RAILWAY COMPANY, Appellant.

A., plaintiff's intestate, a switchman employed in defendant's yards, in helping to make up and distribute trains, while engaged in his employment caught his foot in a "frog" which connected two converging tracks and was used to effect the transfer of cars from one track to the other; before he could release himself he was run over and killed. In an action to recover damages, it was claimed that blocks of wood could be placed in the openings of frogs and thus prevent such accidents. It appeared that A. had been in defendant's employ for some years and for quite a length of time in and about the yard where the accident happened and was acquainted with the frog and knew that it was not "blocked." *Held*, that A., in accepting and continuing in the employment assumed the hazard of all known and obvious dangers, and that he was chargeable with notice of the difficulty in removing the foot when caught in the frog, and of the danger to be apprehended therefrom; and, therefore, that a cause of action was not made out and a refusal to nonsuit was error.

(Argued December 3, 1888; decided December 11, 1888.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered on an order made April 17, 1886, which denied a motion for a new trial and ordered judgment for plaintiff on verdict.

This action was brought to recover damages for alleged injuries causing the death of Henry Appel, plaintiff's intestate.

Appel was a switchman in defendant's employ and was engaged in coupling and uncoupling cars in its yards in Buffalo. His business was to direct the movement of the cars of a train for distribution in the yard and to uncouple the cars. While engaged in uncoupling cars his foot was caught in a frog and he was run over and killed. The alleged negligence was in the neglect to "block" the frog. Plaintiff's evidence tended to show that this might have been done by inserting wooden blocks between the converging rails constituting the frog. It did not appear that it was usual so to do and defendant did not do it.

*John G. Milburn* for appellant.   A servant who has accepted service with knowledge of the character and position of struc-tures, from which he may be liable to injury, cannot, in case of injury resulting therefrom, maintain an action against his employer for indemnity ; he assumes apparent risks, and can-not call upon his employer to make alterations to secure greater safety.   (*De Forest* v. *Jewett*, 88 N. Y. 264, 268 ; 23 Hun, 490 ; *Powers* v. *N. Y., L. E. & W. R. R. Co.*, 98 N. Y. 274 ; *Burke* v. *Witherbee*, Id. 562, 567 :   *Marsh* v. *Chickering*, 101 id. 396 ;   *Sweeny* v. *B. & J. En. Co.*, Id. 520 ;   *Shaw* v. *Sheldon*, 103 id. 667 ;   *Hickey* v. *Taaffe*, 105 id. 26 ; *Anthony* v. *Leeret*, Id. 591 ;   *Cahill* v. *Hilton*, 106 id. 518 ;   *R. R. Co.* v. *McCormick*, 74 Ind. 440 ;   *Williams* v. *R. R. Co.*, 43 Iowa, 396 ;   *R. R. Co.* v. *Coats*, 62 id. 486 ;   *Mays* v. *R. R. Co.*, 63 id. 562 ;   *Tuttle* v. *R. R. Co.*, 122 U. S. 189 ;   *Lovejoy* v. *R. R. Co.*, 125 Mass. 79 ;   *Moulton* v. *Gage*, 138 id. 390 ;   *Pingree* v. *Leyland*, 135 id. 398 ;   *Yeator* v. *R. R. Co.*, Id. 418.)   The surface and sides of the rails being equally in sight, ordinary care required the switchman to observe both the surface of the rail and the shape of its side.   (*Haas* v. *B., N. Y. & P. R. R. Co.*, 40 Hun, 145 ;   *Mays* v. *R. R. Co.*, 63 Iowa, 562 ;   *Cahill* v. *Hilton*, 106 N. Y. 518 ;   *Powers* v. *R. R. Co.*, 98 id. 277–280 ;   *Marsh* v. *Chickering*, 101 id. 399, 400 ; *Hickey* v. *Taaffe*, 105 id. 37 ;   *Anthony* v. *Leeret*, Id. 600.) The question as between master and servant is, whether the master has exercised ordinary care in providing the facilities and appliances necessary in the business.   (*Wright* v. *R. R. Co.*, 25 N. Y. 562 ;   *Leonard* v. *Collins*, 70 id. 90 ;   *Warner* v. *Erie R. Co.*, 39 id. 468 ;   *Henry* v. *R. R. Co.*, 81 id. 573.) The master is not bound to use the safest known appliances or instruments, nor to discard those which are not such, and to supply their places with others that are safer.   (Thompson on Neg. 983 ;   *Burke* v. *Witherbee*, 98 N. Y. 562 ;   *Marsh* v. *Chickering*, 101 id. 396 ;   *Sweeney* v. *Envelope Co.*, Id. 520 ; *Bajus* v. *R. R. Co.*, 103 id. 312 ;   *Hickey* v. *Taaffe*, 105 id. 26 ;   *Anthony* v. *Leeret*, Id. 591.)   It was error to charge the jury that it was the duty of the defendant to furnish proper

tracks and proper implements in its railroad business. (*Leonard* v. *Collins*, 70 N. Y. 90.) It was error to charge the jury that, in the absence of the attention of the employe being called to it, no duty rests upon him to examine and scrutinize carefully the structures and appliances used in connection with the business in which he is employed. (Thompson on Neg. 1009.) The court erred in refusing to charge the jury that if the officers of the company having charge of the tracks and frogs, after the exercise of ordinary care and investigation, exercised a fair and honest judgment in not blocking the frogs, the defendant was not chargeable with negligence. (*De Forest* v. *Jewett*, 19 Hun, 506.)

*H. J. Swift* for respondent. The duty of the master to the servants, and the implied contract between them, is to the effect that the master shall furnish proper, perfect and adequate machinery and other materials and appliances necessary for the proposed work, and that the duty or contract is to be affirmatively and positively fulfilled and performed. (*Bushby* v. *N. Y., L. E. & W. R. R. Co.*, 37 Hun, 104; *Hawley* v. *N. C. R. R. Co.*, 82 N. Y. 370; *Lanning* v. *N. Y. C. & H. R. R. R. Co.*, 49 id. 521.) This duty is not fulfilled simply by employing fit and competent agents to see that it is performed. (*Kirkpatrick* v. *N. Y. C. R. R. Co.*, 79 N. Y. 240.) As it appears that, while doing his work, the attention of plaintiff's intestate would not be called to the frog, as his work was above it, and his attention directed to the coupling and uncoupling of the cars, and not to the position of his feet, it cannot, therefore, be said, as a matter of law, that he was chargeable with negligence in not discovering the danger into which he fell. (*Bushby* v. *N. Y., L. E. & W. R. R. Co.*, 37 Hun, 106; *Meecham* v. *S. R. R. Co.*, 73 N. Y. 585; *Dale* v. *St. L., K. C. & N. R. R. Co.*, 21 Am. R. R. Rep. 217.) The question submitted to the jury whether the plaintiff's intestate knew of the particular danger resulting from the unblocked frog, and the evidence in the case raised a fair question for the consideration of the jury, which the court

was obliged so to submit.   ( *Wooley* v. *Grand St. R. R. Co.*,
83 N. Y. 121–125 ; *Kane* v. *Smith*, 89 id. 375–385 ; *Hawley*
v. *N. C. R. R. Co.*, 82 id. 370–372 ; *Magee* v. *R. I. & P.
R. R. Co.*, 9 Am. R. R. Rep. 527.)

PECKHAM J.  The plaintiff's intestate had been a switchman
for some years and had been for quite a length of time in the
employment of the defendant in and about the yard where
the accident happened, and he was, therefore, acquainted with
the means employed therein by the defendant to accomplish
its necessary work.   Part of the means was the " frog "
which was used to effect the transfer of a train from one track
to another which crossed it.   Its shape and purpose and the
fact that it was unblocked must have been as familiar to the
deceased as any other thing connected with the railroad.
It is scarcely to be credited that a man employed as a
switchman, and who discharged his duties in the midst of a
large number of just such instruments, could possibly be
ignorant of their shape or of the fact that they were unblocked,
or could fail to understand that there was a liability or chance
to get one's foot caught in their converging rails and to suffer
some grievous accident therefrom.

The court below very properly held that, by his acceptance
of the service and his continuance therein, the deceased
assumed the hazard incident to an obvious or known danger.
But the court held, with some hesitation, that it might be sub-
mitted to the jury as a question of fact whether the deceased
was charged with notice of the manner and difficulty of
removing his foot when within these converging rails and of
the danger of the situation in which he might then be placed.

We feel quite sure that one who worked among these rails
daily for months and years, necessarily, was familiar with
their shape and general construction, and must have known
of the difficulty of removing a foot caught in the space between
the rails and the danger of the situation arising therefrom.
We cannot believe that any one could thus work and yet,

while familiar with the frog, its purpose and use, and with its apparent form and condition, and that it was unblocked (with all of which knowledge the learned court below correctly charged the deceased), could still be ignorant that there was danger to be apprehended by getting his foot caught between the rails, and that there was a liability to have it thus caught. Such liability is seen upon the slightest inspection of the frog when coupled with knowledge (which, we believe, is in the possession of every man) that the rail of a railroad as it rests upon the ground is wider at the top and bottom than in the center.

We can have no doubt that the danger was obvious and known to the deceased. The case cannot be distinguished from *De Forest* v. *Jewett, Receiver, etc.* (88 N. Y. 264.)

The judgment should, therefore, be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.